

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

June 14, 1939

Honorable Tom C. King
State Auditor & Efficiency Expert
Austin, Texas

Dear Sir:

Opinion No. O-951
Re: Validity of contract between
State Board of Control and the
San Jacinto Museum Associa-
tion concerning the care, cus-
tody and control of the San
Jacinto Memorial Tower.

We have for acknowledgment your letter of June 8, 1939, wherein you refer to a copy of a contract attached to your letter, entered into on April 18, 1939, by the State Board of Control with the San Jacinto Museum Association, a corporation, under the terms of which the Board of Control, under the authority of Senate Concurrent Resolution No. 21, passed by the 46th Legislature, places the care, custody, and control of the San Jacinto Memorial Tower in said corporation, limits the use of said building and equipment to public purposes, including the installation and maintenance of a historical museum, and authorizes the corporation to sell souvenirs and to operate a conces-sion in or about said building, the location of the conces-sions and the rules under which they are to be operated to be established by said Association and approved by the Board of Control, etc.

You asked the opinion of this Department upon the following questions:

"1. Does the above mentioned contract violate Article Three (3) Section Fifty-one (51) of the State Constitution, or does the delegation of such governmental authority to a self perpetuating cor-poration violate any part or provision of the Con-stitution of this State?

"2. If question Number One is answered in the
negative, would charges for elevator service be
public monies and as such subject to State control?

"3. If question Number One is answered in the nega-
tive, can the policing power of the Memorial be
delegated to the corporation?

"4. If question Number One is answered in the nega-
tive, would the title to sacred historical documents
or objects purchased with funds or fees earned by
the corporation become the property of the State,
or would they remain the property of the corpora-
tion subject to whatever disposition the self per-
petuating body should make of them?

"5. If question Number One should be answered in
the negative, does the contract requirement of ap-
proval of the Board of Control of the rules pro-
mulgated by the corporation, for the operation of
the Memorial, constitute the corporation an employee
of the Board of Control, or would it be construed
that the Board of Control is given regulatory
authority over the corporation by contract; and if
the answer is the latter, what would be the effect
of approval or disapproval of the Board, and would
such rules of the corporation be effective prior
to the approval of the Board?  It is intended that
this question include the provision under which
the corporation is authorized, 'To make a reason-
able charge, to be approved by the Board, for the
use of the elevator to the observation tower in
the top of the shaft.'

"6. If question Number One is answered in the nega-
tive, would the provision in Section six (6) of
the contract referring to the 'Balance, if any,
to be used on the grounds of the San Jacinto State
Park under the direction of the Board of Control'
be funds to be deposited into the State Treasury,
or would these funds be administered by the corpora-
tion?

"7. If question Number One is in the negative,
does the provision of Section Six (6) of the con-
tract, 'The Association shall submit to the Board
for approval, a detailed monthly report of all col-
lections and expenditures of these funds' mean that
the corporation is a State agency contracting to



perform this function of government?

"8. If question One is in the negative, does the provision in Section (8) of the contract in addition to other provisions, '... shall terminate and the San Jacinto Memorial Tower shall revert to the State of Texas ...' constitute the contract, as a lease agreement of this public property, to the corporation?"

Your first question is answered in the negative. The contract does not violate Article 3, Section 51 of our Constitution, nor, so far as we have observed, any other portion or provision of the Constitution of Texas. The authority of the State of Texas to enter into contracts of this character was upheld in the case of Conley vs. Daughters of the Republic, 156 S. W. 197, which was a case dealing with an Act of the Legislature of the State of Texas authorizing the Governor to deliver the Alamo property belonging to the State into the custody and care of the Daughters of the Republic of Texas, to be maintained by them in good order and repair, without charge to the State, as a sacred memorial to the heroes who immolated themselves upon the hallowed grounds. The Supreme Court of the State of Texas, in that case, upheld the power of the Legislature of Texas thus to provide for the care and custody of its property, stating that the State has the same rights and powers in respect to its property as an individual. Specifically, the Court stated:

"We are of opinion that the State, acting by its Legislature, had the authority to acquire title to the Alamo property and to place that property in the custody of the corporation, the Daughters of the Republic."

As to the question of policy involved, the Court had this to say:

"This question is asked: 'Should a State commit its interests to corporations?' This Court has naught to do with the policy of the State on that question."

Your second question is answered in the affirmative. By Section 6 of the contract, it is contemplated that the corporation, as trustee for the State, shall use the money

collected from operating the elevator to defray the expenses of operating the elevator, paying janitors and watchmen, and for maintenance and policing of the building, and for complying with the general terms of the resolution of the Legislature in respect to insurance, with the balance of said moneys, as well as the balance of the net profits remaining after the payment of such expenses, to be used on the grounds of the San Jacinto State Park under the direction of the Board of Control. The section provides that the corporation shall submit to the Board, for approval, a detailed monthly report of all collections and expenditures of such funds. It is therefore contemplated by the contract that expenditures of such funds shall be made by the corporation, as trustee for the State, under the direction, supervision, and approval of the State Board of Control.

The moneys are thus subject to State control in the sense that the State has the right to see that such moneys are expended by the corporation in accordance with the terms and provisions of the contract and of the resolution of the Legislature.

Your third question is answered in the affirmative. The authority of the Legislature to place the duty of policing the memorial in the hands of the corporation has been sustained by the case of Conlay vs. Daughters of the Republic, above referred to.

Your fourth question is answered in the negative. The disposition of the net profits collected from selling souvenirs and operating a concession and the money collected from operating the elevator is provided by Section 6 of the contract. The contract contemplates only that the association shall use such moneys for the purposes specified therein, to-wit: (1) Expenses of operating the elevator. (2) Paying janitors and watchmen. (3) Expenses of maintenance and policing of the building. (4) For complying with the general terms of the resolution in respect to insurance. (5) The balance of the net profits after such uses have been made, is required to be used on the grounds of the San Jacinto State Park, under the direction of the Board of Control.

It is not contemplated by the contract or by the resolution that any sacred historical documents or objects purchased with such funds or fees shall become the property of the corporation, for it is expressly provided in the resolution and in the contract that the association or

corporation shall act as trustee for the State in respect to the care, custody, and control of the San Jacinto Memorial Tower without charge to the State of Texas, and to permit the use of such funds to purchase property which is to belong to the corporation, rather than to the State, would be compensating such corporation for such services. Furthermore, the contract itself does not contemplate that any of such funds shall be used for purchasing sacred historical documents or objects. Any such property as purchased by the association, therefore, would be held by such association, if purchased with such funds, as trustee for the State, and not in its proprietary capacity.

However, all furniture, fixtures and equipment installed in said building by and at the expense of the association, paid for with its own funds, and all of its historical data, material and collections, paid for with its own funds, under the provisions of Section 8 of the contract, continue to belong to and remain the property of the association.

Answering your fifth question, you are advised that the status of the corporation has been determined by the case of Conley vs. Daughters of the Republic, supra, to be that of trustee. The case referred to states:

"We are of opinion that by the acceptance of the terms of the statute, the corporation became a trustee for the State."

Section 5 of the contract contemplates that the location of the concessions and the rules under which they are to be operated are to be established by said association and approved by the Board of Control. It is likewise contemplated by said section that the charge to be made by the association for the use of the elevator to the observation tower is to be approved by the Board of Control.

Section 6 of the contract likewise contemplates that a detailed monthly report of all collections and expenditures of funds derived from selling souvenirs, operating the concession, and from operating the elevator, shall be made to and approved by the State Board of Control.

In our opinion, the rules of the corporation would not be effective prior to the approval of the Board, nor would the corporation be authorized to make any charge for the use of the elevator in the absence of its prior



approval by the Board.

In our opinion, the balance referred to in your sixth question constitutes a trust fund to be held by the trustee, the corporation, for the use and benefit of the State, and to be expended by the trustee corporation on the grounds of the San Jacinto State Park as may be directed by the Board of Control.

Your seventh question has already been answered. The corporation is a trustee, and in the administration of the trust is, by the terms of the contract, subject to the supervisory control of the Board of Control in the particular respects indicated above.

The character of control maintained by the Board is further emphasized by the provisions of Section 7, which require the preparation by the corporation of necessary rules and regulations covering the complete operation of the building and the submission of such rules and regulations to the Board for approval, and by the provisions of Section 8, which provide that in the event of a breach by the corporation of any of the terms or conditions of the contract, the contract at the option of the Board shall terminate and the San Jacinto Memorial Tower revert to the possession of the State of Texas, and the rights of the association therein shall cease.

Answering your eighth question, the contract is a trust, rather than a lease, agreement, the distinction resting upon the capacity in which the corporation takes the possession of the property.

We trust that the above satisfactorily answers all of your inquiries.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By R. W. Fairchild
R. W. Fairchild
Assistant

RWF:PBP

APPROVED:

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN